# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

## Case No. 1:17-cv-22719-UNGARO
_____

TRACY JEAN-BAPTISTE,

on behalf of herself and all others similarly situated,

       Plaintiff,

v.

A.D.M.E. INVESTMENT PARTNERS, LTD.
d/b/a OCEANSIDE EXTENDED CARE CENTER,
A.D.M.E. INVESTMENT CORPORATION,
and A.D.M.E. REAL ESTATE, LLC,

       Defendants.

## JOINT MOTION AND SUPPORTING MEMORANDUM

      Tracy Jean-Baptiste ("Plaintiff") on her own behalf and as proposed representative of the Settlement Class, as defined below, on the one hand, and A.D.M.E. Investment Partners, Ltd. d/b/a Oceanside Extended Care Center ("A.D.M.E. Partners"), A.D.M.E. Investment Corporation ("Investment Corp."), and A.D.M.E. Real Estate, LLC ("Real Estate, LLC," and collectively with A.D.M.E. Partners and Investment Corp., the "Defendants") on the other hand (sometimes collectively referred to herein as the "Parties"), by and through their respective counsel of record, submit this motion (the "Joint Motion") for: (A) entry of an order (1) granting preliminary approval of the Parties' proposed Stipulation of Class Action Settlement and Release (the "Agreement"), (2) approving the form and authorizing the mailing of the Parties' proposed Notice to Settlement Class, (3) scheduling a Fairness Hearing for the final consideration and approval of the settlement, and (4) granting related relief; and, following the Fairness Hearing, (B) entry of a final order approving the settlement in accordance with the terms of the Agreement. The Parties' proposed preliminary and final approval orders are attached as Exhibits

1

B and C, respectively, to the Agreement filed with this Joint Motion.

As set forth in detail in the Agreement, the proposed settlement contemplates certification pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), for settlement purposes only, of a settlement class numbering approximately 210 individuals and reflected on the documents bates stamped "ADME 1-7," who were directly employed by A.D.M.E. Partners and who worked at or reported to the Facility (defined herein) and were terminated, without cause on their part, on or about January 12, 2017 or within thirty (30) days before or after that date, as part of, or as the reasonably expected consequence of, the plant closing at the Facility alleged in the Lawsuit (the "Settlement Class," and individually, the "Settlement Class Members").

Assuming the Court preliminarily approves the settlement under Rule 23 and notice to the Settlement Class, the notice will be mailed to the Settlement Class Members and, upon conclusion of the opt-out period, the Parties will seek final approval of the settlement as described in the Agreement and this Joint Motion.

## Jurisdiction

1. This Court has jurisdiction over this lawsuit (the "Lawsuit") and this Joint Motion under 28 U.S.C. § 1331 and 29 U.S.C § 2104 (a)(5). Venue is proper in this district pursuant to 29 U.S.C. § 2104(a)(5).

## Background

2. This Lawsuit was filed in this Court on July 20, 2017. The Lawsuit is a putative class action alleging violations of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101 *et seq.* (the "WARN Act"), in connection with employee terminations which were part of, or the result of, a mass layoff and/or plant closing allegedly ordered by the Defendants on or about January 12, 2017, and thereafter, at the facility located at 550 9th Street Miami Beach, Florida 33139 (the "Facility"). Plaintiff alleges that Defendants employed her, pursuant to the WARN Act's single employer rule, and failed to provide at least sixty (60) days' advance written notice of termination, as allegedly required by the WARN Act, to Plaintiff and more than 200 similarly situated employees. Plaintiff contends that Defendants' failure to give such notice

renders each liable, jointly and severally, to each affected employee for up to sixty (60) days' pay and benefits.

3. Defendants answered the complaint on August 28, 2017. Defendants admitted that A.D.M.E. Partners was an "employer," as that term is defined in 29 U.S.C. § 2101(a)(1) of the WARN Act, but denied violating the WARN Act. Further, Defendants denied that they constituted a single-employer under the WARN Act and raised several affirmative defenses. Defendants contend, among other things, that (1) they do not constitute a single-employer under the WARN Act; (2) they did not order the alleged plant closing; (3) the alleged plant closing and related terminations were not reasonably foreseeable at the time notice would have been required by the WARN Act; (4) Defendants are not liable under the WARN Act to the extent any alleged Class Members did not suffer an "employment loss" as defined by the WARN Act; and (5) Defendants provided notice in substantial compliance with the WARN Act. Defendants dispute and deny liability with respect to all claims asserted in the Lawsuit.

4. Also, on August 28, 2017, Defendants filed a motion to strike ("Motion to Strike") certain paragraphs in, and exhibits to, Plaintiff's complaint. Plaintiff opposed the Motion to Strike and Defendants filed a reply in support of the Motion to Strike. After the matter was fully briefed, the Court denied the Motion to Strike.

5. The Parties prepared a Joint Proposed Scheduling Order and Discovery Plan, which was filed on September 15, 2017. The Court entered a Scheduling Order For Pretrial Conference and Trial on October 6, 2017. Also on October 6, 2017, the Court entered an Order of Referral to Mediation. The Parties selected a mediator on October 19, 2017, and subsequently scheduled a mediation to take place on January 31, 2018.

6. On November 13, 2017, Plaintiff served Defendants with Requests for Production of Documents. On November 14, 2017, in furtherance of settlement discussions, Defendants produced documents containing an employee list and other pertinent employment information, as well as the collective bargaining agreement that applied to the union represented employees employed at the Facility. The Parties exchanged Initial Disclosures on November 22, 2017. In

December 2017, Defendants responded to Plaintiff's Requests for Production of Documents to Defendants and made a voluminous production of responsive documents. Also, in December 2017, Defendants served Plaintiff with Interrogatories and Requests For Production.

7. From October to December 2017, the Parties engaged in serious, arms' length, good faith settlement discussions, which included numerous conference calls and exchanges of informal and formal information and discovery. As a result of these negotiations, the Parties agreed to settle the Lawsuit and signed a Confidential Memorandum of Understanding ("MOU") on December 21, 2017, that memorialized their agreement and provided for the preparation of a formal settlement agreement. The Agreement formalizes the Parties' agreements and supersedes the MOU, which, upon execution of the Agreement and final approval by the Court, shall be void and have no further effect.

8. The Parties reached the Agreement following significant investigation, analysis, and discovery, and they believe that the Agreement is in the best interests of the proposed Settlement Class Members and the Parties. The Agreement reflects the Parties' recognition that there are significant, complex issues regarding the application of the WARN Act and cases and regulations interpreting the Act to the facts of the case. Plaintiff and Defendants disagree as to whether Defendants had any liability under the WARN Act with respect to the proposed Settlement Class Members' claims. Further, the Agreement takes into account a number of factors, including, but not limited to, (a) the pending criminal proceedings and monetary penalties sought by the United States against one of Defendants' former owners; (b) the impact of these criminal matters on Defendants; (c) Defendants' joint obligations on outstanding secured debt and their limited resources; and (d) the high risk of non-payment should the matter have been litigated to a final judgment in favor of Plaintiff and the proposed class.

9. Plaintiff and Class Counsel have concluded, after performing a thorough study of all relevant facts and the law, including the sharply disputed factual and legal issues involving the Lawsuit, the risks, uncertainties, time, and expense attending further prosecution of the Lawsuit, including risks associated with Defendants' precarious financial condition, and the

4

substantial benefits to be provided to the proposed Settlement Class Members pursuant to the compromise and settlement of the Lawsuit, that the settlement as embodied in this Agreement is fair, adequate, and reasonable and is in the best interests of Plaintiff and the proposed Settlement Class Members.

### Class Certification

10. Class certification pursuant to Rule 23 requires that each of the four prerequisites for certification, namely 23 (a)(1), (2), (3) and (4) be met and, in addition, that at least one of the conditions set forth in the subparts of Rule 23(b), namely 23(b)(1)(A), 23(b)(1)(B), 23(b)(2) or 23(b)(3), be satisfied.   Plaintiff contends, and Defendants do not dispute for the purposes of settlement only,[1] that all the prerequisites for certification of the proposed Settlement Class are present, as set forth below.

(a) Numerosity:  For purposes of the settlement, the Plaintiff contends that the numerosity factor of Rule 23(a)(1) is met because the proposed Settlement Class numbers over 200 former employees, clearly making joinder impracticable.

(b) Commonality:  Plaintiff contends that the commonality factor of Rule 23(a)(2) is met because there are numerous questions of law or fact common to every member of the proposed Settlement Class, namely, (i) whether Defendants were a "single employer" as defined by the WARN Act; (ii) whether a "mass layoff" or "plant closing" occurred, as defined in the WARN Act; (iii) whether Defendants terminated the employment of Plaintiff and each Settlement Class Member in connection with a statutorily covered plant closing or mass layoff; (iv) if so, whether Defendants were entitled to give fewer than sixty (60) days' notice under the WARN Act through the application of a statutory defense;  (v) whether Plaintiff and each Settlement Class Member was an "affected employee" within the meaning of the WARN Act;

---

[1] Defendants do not concede that certification is appropriate outside of this settlement and preserve all rights to oppose certification if, for any reason, the settlement does not become effective.  Plaintiff's contention throughout this brief that the action is appropriate for certification is subject to Defendants' position that certification is appropriate for settlement purposes only.

(vi) whether Plaintiff and each Settlement Class Member suffered an "employment loss" within the meaning of the WARN Act; (vii) whether Plaintiff and each of the Settlement Class Members was an "aggrieved employee" within the meaning of the WARN Act; (viii) whether Plaintiff and each of the Settlement Class Members was entitled to notice under the WARN Act and, if so, the amount of notice to which each employee was entitled; (ix) whether, under the facts of this case, the Defendants are entitled to the "good faith" defense set forth in Section 2104(a)(4) of the WARN Act; and (x) whether the Defendants were obligated to pay the class members sixty (60) days' pay and benefits.

(c) Typicality: Plaintiff contends that the typicality factor of Rule 23(a)(3) is met here as "the claims . . . of the representative parties are typical of the claims . . . of the class."

(d) Adequacy of Class Representative: Plaintiff contends that the adequacy factor of Rule 23(a)(4) is met based on the Declaration of Mary E. Olsen (the "Olsen Declaration") filed herewith. As demonstrated by the Olsen Declaration, Plaintiff, who is the proposed Class Representative, (i) has diligently prosecuted this Lawsuit and will continue to do so; (ii) has no conflict of interest with the other proposed Settlement Class Members; and (iii) has diligently represented and protected the interests of the proposed Settlement Class and will continue to do so. As further demonstrated by the Olsen Declaration, Class Counsel are well qualified and experienced to represent the Settlement Class Members. Collectively, they have been appointed as class counsel in more than one hundred WARN actions.

11. Plaintiff contends, and Defendants do not dispute for the purposes of settlement only, that the proposed Settlement Class also meets the requirements of Rule 23(b)(3). Plaintiff contends that the common questions of law and fact that affect all members of the proposed Settlement Class predominate over any questions affecting only individual members. Plaintiff contends that a class action is superior to other available methods for the fair and efficient adjudication of the controversy for the following reasons:

(a) No proposed Settlement Class member has an interest in individually controlling the prosecution of a separate action under the WARN Act.

(b) No other litigation concerning the WARN Act rights of any proposed Settlement Class Member is currently pending to the Parties' knowledge.

(c) Concentrating all potential litigation concerning the WARN Act rights of the proposed Settlement Class Members in this Court will avoid a multiplicity of suits, will conserve judicial resources and the resources of the Parties, and is the most efficient means of resolving the WARN Act rights of all proposed Settlement Class Members.

(d) Administration of this Lawsuit as a class action will not be complicated or difficult because the names and addresses of the proposed Settlement Class Members can be established from A.D.M.E. Partners's records, as updated through the efforts of Class Counsel or the Settlement Administrator.

12. For the foregoing reasons, the Court should enter preliminary and (following the Fairness Hearing) final orders certifying the proposed Settlement Class for settlement purposes only, in accordance with the terms and conditions of the Agreement.

## The Agreement

13. The complete Agreement is filed herewith. The following summary of key terms of the Agreement is provided for the Court's convenience. This summary does not alter, add to, or supersede any terms of the Agreement itself.

(a) The Parties agreed to have the Court certify the Settlement Class for settlement purposes only.

(b) The Agreement contemplates the appointment of Plaintiff as Class Representative, her lawyers as Class Counsel, and the engagement of a Settlement Administrator.

(c) The Agreement contemplates that Class Counsel will mail the Notice to Settlement Class, attached to the Agreement as Exhibit A, to all Settlement Class Members, as detailed at paragraphs 15 through 19, below; provides appropriate opportunities for Settlement Class Members to opt out of or object to the settlement; and provides for final approval of the settlement at or following the Fairness Hearing.

  (d) The parties have agreed that, if the Court grants final approval of the Agreement and the Effective Date (as defined in the Agreement) occurs, A.D.M.E. Partners, or a person or entity acting on its behalf, will, within five (5) business days after such Effective Date, wire to Class Counsel or a designated Settlement Administrator, for deposit into the Qualified Settlement Fund (as defined in the Agreement) a total of $200,000.00 (the "Settlement Amount"). The Settlement Administrator will then distribute the Settlement Amount as follows: (i) a one-time payment to Plaintiff of $5,000 (the "Service Payment"); (ii) payment to Class Counsel for attorneys' fees in the amount of one third of the remaining Settlement Amount (i.e., $65,000.00) ("Class Counsel's Fees"); (iii) payments to Class Counsel for litigation expenses, including costs associated with the production and mailing of the Notice, and the costs and fees attributable to the Settlement Administrator for settlement administration expenses, which collectively shall not exceed $20,000.00 ("Class Counsel's Expenses"); and (iv) the balance (the "Net Settlement Fund" or "NSF"), which shall be paid to the Settlement Class Members who do not opt-out ("Qualified Class Members"). The NSF shall be allocated among the Qualified Class Members, as determined in good faith by Class Counsel and will take into account the wages and benefits of each Qualified Class Member, calculated for the alleged period of the violation, as well as any Settlement Class Member's acceptance of a transfer or alternative employment arranged or facilitated, in whole or in part, by any of the Defendants.

  (e) Settlement checks paid to Qualified Class Members (except for the Service Payment to the Class Representative) will be allocated as W-2 wage payments. All payments to Qualified Class Members shall be net of all applicable federal, state and local income, employment and payroll withholdings taxes associated with W-2 wage payments ("Withholdings"), and all applicable employer portions of employment and payroll taxes associated with W-2 wage payments ("Employer Portions") shall be paid out of the Settlement Amount.

  (f) Upon occurrence of the Effective Date and payment of the Settlement Amount in accordance with the terms of the Agreement, the Agreement will constitute a full and final settlement and release by Plaintiff and the Qualified Class Members as set forth in the

Agreement.

14. The Parties ask the Court to approve the Agreement, for the following reasons:

(a) The Agreement reflects the result of arms' length, good faith negotiations which spanned the months of October through December 2017.

(b) The Agreement reflects the recognition by the Parties that there are significant, complex issues regarding the application of the WARN Act and the various cases and regulations interpreting that Act to the facts of the case. The Plaintiff and the Defendants disagree as to whether the Defendants had any obligation or liability under the WARN Act with respect to the proposed Settlement Class Members' claims. Plaintiff submits that, if successful in the Lawsuit, class-wide damages may have been as much as approximately $580,000, whereas Defendants deny all liability and damages.

(c) The Agreement also takes into account a number of factors, including, but not limited to, (i) the pending criminal proceedings and monetary penalties sought by the United States against one of Defendants' former owners; (ii) the impact of these criminal matters on Defendants; (iii) Defendants' joint obligations on outstanding secured debt and their limited resources; and (iv) the high risk of non-payment should the matter have been litigated to a final judgment in favor of Plaintiff and the proposed class.

(d) Plaintiff and Class Counsel have concluded, after performing a thorough study of all relevant facts and the law, including the sharply disputed factual and legal issues involving the Lawsuit, the risks, uncertainties, time, and expense attending further prosecution of the Lawsuit, including risks associated with Defendants' precarious financial condition, and the substantial benefits to be provided to the proposed Settlement Class Members pursuant to the compromise and settlement of the Lawsuit, that the settlement as embodied in the Agreement is fair, adequate, and reasonable and is in the best interests of Plaintiff and the proposed Settlement Class Members.

(e) The Agreement contemplates the full and final resolution of all claims in the Lawsuit without extensive, costly litigation.

(f)     The Agreement provides for actual notice to all Settlement Class Members of the Agreement's terms and effect, as well as opportunities to opt out of the settlement, to object to the Agreement, and to participate in the Fairness Hearing.

(g)     The Agreement provides for the expeditious distribution of the agreed Settlement Amount by a qualified Settlement Administrator, which distribution includes fair and reasonable payments to every Qualified Class Member, as well as fair and reasonable compensation to Class Counsel, the Plaintiff, and the Settlement Administrator for their services and expenses in connection with the Lawsuit, and provides that Settlement Class Members who opt out will *not* be bound by the Agreement's terms.

### The Contents of the Class Notice

15.     The Parties submit that the proposed Notice to Settlement Class attached to the Agreement as Exhibit A (the "Notice") meets the requirements of Rule 23(c)(2)(B).  That rule, in pertinent part, provides as follows: "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action;(ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on class members under Rule 23(c)(3)."

16.     The proposed Notice satisfies each of the foregoing requirements.  The Notice is accurate, informative, and readable by the average person.  It is written in plain language and provides key information about the Agreement.  The Notice states the nature of the Lawsuit, the class claims, and the issues and defenses.  The Notice also states that a Qualified Class Member may enter an appearance through counsel and that the Agreement, when approved, will be binding on all Qualified Class Members.  The Notice also sets forth the terms of the proposed Agreement, the right of each proposed Settlement Class Member to opt out, and the right of Qualified Settlement Members to object to the proposed settlement.  *See* Rule 23(c)(2)(B) and Rule 23(e).  The Notice provides proposed Settlement Class Members with the estimated amount

of their individualized, projected pre-tax share of the NSF. The Notice also apprises the proposed Settlement Class, among other things, that complete information regarding the Agreement is available upon request from Class Counsel and that any Qualified Class Member may appear and be heard at the Fairness Hearing, as well as the date, time, and place of the Fairness Hearing.  In addition, the notice informs the proposed Settlement Class Members of the request for the approval of Class Counsel's Fees and Class Counsel's Expenses.  *See* Rule 23(h).  In short, the Notice is adequate to apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the approval of the Agreement.

### The Manner of Notice

17.     As to the manner of giving notice, Rule 23(c)(2)(B) provides, in pertinent part, as follows: "For any class certified under Rule 23(b)(3), the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

18.     An individual mailing to each class members' last known address has been held to satisfy the "best notice practicable" test.  *Eisen v. Carlisle & Jacquelin et al.*, 417 U.S. 156, 173-175 (1974) (individual mailings satisfy Rule 23(c)(2)).

19.     The Agreement provides that, within ten (10) business days following entry of the Preliminary Approval Order, Class Counsel will mail the Notice by first class mail, postage prepaid, to all Settlement Class Members at the address included on the Class List or as updated through the efforts of Class Counsel.  The Agreement also contemplates that the Fairness Hearing will be held at least six (6) weeks after the Notice is mailed.   The Parties submit that giving notice in this manner prior to the Fairness Hearing satisfies the "best notice practicable" test.  In the case of any returned envelopes, Class Counsel will forward them to such corrected addresses as Class Counsel may be able to obtain from a national database to which Class Counsel subscribes or as Class Counsel may otherwise obtain.

### The Court Should Preliminarily Approve the Agreement
### Pursuant to Fed. R. Civ. P. 23

20. Although Rule 23(e) does not specify any particular procedure as to how a court should review a class action settlement, a number of courts have adopted a two-step procedure consisting of (a) preliminary approval of the settlement before notice is given to class members, and (b) a subsequent "fairness hearing" at which all class members have an opportunity to be heard on whether final approval of the settlement should be granted. *See Bennett v. Behring Corp., 737 F.2d 982, 985* (11th Cir. 1984*)* (preliminarily approving settlement and scheduling fairness hearing)*; see also, Lane v. Facebook, Inc.*, 696 F.3d 811, 818-20 (9th Cir. 2012); *Armstrong v. Board of School Directors*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp.1379, 1384 (D. Md. 1983); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 278 (S.D.N.Y. 1999) (same); *Hickerson v. Velsicol Chem. Corp.*, 121 F.R.D. 67, 69 (N.D. Ill. 1988) (same); *Seiffer v. Topsy's Int'l, Inc.*, 70 F.R.D. 622, 625 (D. Kan. 1976) (same). The purpose of the preliminary approval is to evaluate the settlement to determine whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." Manual for Complex Litigation, Second § 30.44 (1985); *see also Facebook*, 696 F.3d at 818-20; *Armstrong*, 616 F.2d at 314; *Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. at 1384.

21. Consistent with the case law employing a two-step procedure, the Parties request that the Court, at the initial hearing on the Joint Motion, (a) grant preliminary approval of the Agreement, (b) certify the Settlement Class for settlement purposes only, (c) appoint Plaintiff as Class Representative for the Settlement Class, (d) appoint counsel for Plaintiff as Class Counsel for the Settlement Class, (e) set a date for a final Fairness Hearing on the Joint Motion, (f) approve the form of the Notice, and (g) authorize and direct Class Counsel to mail the Notice to Settlement Class Members in accordance with the Agreement. The Parties also request that, at

or following the Fairness Hearing, the Court enter an Order finally approving the Agreement in accordance with the terms of the Agreement.

22. When a proposed settlement is the result of arm's-length negotiations, there is a presumption that it is fair and reasonable. *See* 2 Newberg & Conte, *Newberg on Class Actions* §11.41 at 11-88 (3d ed. 1992); *Manual for Complex Litigation* (Third) §30.42. Indeed, a trial court is directed to operate under a presumption of fairness when, *inter alia*, the settlement is the result of arms-length negotiation, there has been investigation and discovery that are sufficient to permit counsel and the court to act intelligently, and counsel are experienced in similar litigation.

23. Here, the Parties worked toward an early compromise in light of Defendants' reduced operations and limited resources. The Parties engaged in arm's-length negotiations for months and continued after Plaintiff served Defendants with requests for production of documents. Before the settlement was reached Defendants provided Plaintiff with responsive documents relating to the claims made in this case, as well as financial information. Thus, the Plaintiff was able to make an informed decision regarding settlement. The Parties believe the settlement to be in the best interest of both sides, taking into account the costs and risks of continued litigation.

24. In determining the reasonableness of a proposed settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977); *see also, In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 1992 U.S. Dist. LEXIS 14337, at *6-8 (C.D. Cal. June 10, 1992) (finding belief of counsel that the proposed settlement represented the most beneficial result for the class to be a compelling factor in approving settlement); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiff's counsel should be given a presumption of reasonableness). Plaintiff's counsel have collectively been named as Class Counsel in over 100 WARN Act class actions over the past seventeen years.

25. Further, preliminary approval of the settlement should be granted if there are no "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment

of class representatives or segments of the class, or excessive compensation for attorneys, and appear to fall within the range of possible approval." *Manual for Complex Litigation* §30.41, at 236-37 (3d ed. 1995).  The Agreement satisfies the standard for preliminary approval, as it is within the range of possible approval and there are no grounds to doubt its fairness. The Plaintiff alleges that class-wide damages may have been as much as approximately $580,000, exclusive of attorneys' fees and costs, while Defendants contend that the WARN claims are without merit. Further, due to Defendants' financial condition and the pending criminal matter against one of Defendants' former owner, there is a high risk of non-payment, should litigation continue.  The Agreement provides Qualified Class Members with their share of the NSF, eliminating risks involved with continued litigation.

26. The proposed Agreement provides meaningful redress for the Settlement Class Members.  While Defendants maintain that they were not a single employer and that an exception to the WARN Act's notice requirements may justify the lack of notice to the employees, Defendants recognize their potential exposure and further recognize the advantages of settlement to avoid additional expense and uncertainty. Thus, the Parties believe that the Agreement provides substantial benefits to the Settlement Class Members, will reduce litigation costs, eliminates uncertainty, and provides finality to the pending Lawsuit.

27. Accordingly, the Court should preliminarily approve the Agreement.

### The Court Should Finally Approve the Agreement As Fair, Reasonable And Adequate To The Settlement Class At The Fairness Hearing Pursuant To Rule 23

28. This Court has broad discretion in determining whether the proposed Agreement, as it relates to the Lawsuit, should be approved.  Settlement of litigation is strongly favored as a matter of public policy. *U.S. Oil & Gas v. Wofson*, 967 F.2d 489, 493 (11th Cir. 1992)(citing *Cotton,* 559 F.2d at 1331).

29. Rule 23(e)(2) provides that a settlement proposal that would bind class members may only be approved after a hearing and on finding by the court that it is fair, reasonable, and adequate.

30. There is a strong judicial policy in favor of settlement in order to conserve scarce resources that would otherwise be devoted to protracted litigation. *Bennett v. Behring Corp.*, 737 F.2d at 986. The Eleventh Circuit in *Bennett* has established the factors that a district court should take into account when evaluating a settlement: (1) the likelihood of success by Plaintiffs at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and likely duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Ingram, et al. v. Coca-Cola,* 200 F.R.D. 685, 688 (N.D. Ga. 2001)(citing *Bennett*, 737 F.2d at 986.) "In addition, the judgment of experienced counsel is relevant to approval." *Ingram*, 200 F.R.D. at 689

31. The Parties submit that the Agreement should be finally approved as fair, reasonable and adequate to the Settlement Class under the factors enumerated by the Eleventh Circuit.

32. As set forth herein, litigation of the class WARN Act claim in the Lawsuit would have been complicated, protracted, expensive and risky in light of the numerous defenses raised by Defendants, as well as their current financial condition.  Plaintiff alleges that class-wide damages may have been as much as approximately $580,000, but Defendants vehemently contest liability.  A.D.M.E. Partners is now closed and essentially defunct.  Real Estate, LLC is subject to a secured obligation, in which it has been declared to be in default, which far exceeds the amount of damages potentially recoverable in this case.  A.D.M.E. Partners and Investment Corp. are each guarantors to A.D.M.E. Partners' secured obligation.  In addition, through the pending criminal proceedings against one of Defendants' owners, the federal government has a lien on and claim to any available assets or monies that would redound to the benefit of such owner. Therefore, even if Plaintiff had been successful in proving "single employer" liability against all Defendants under the WARN Act, the risk of non-payment was high and Plaintiff and the class could very easily have ended up with nothing.

33. In light of the particular risk of non-payment in this matter, along with the other considerations enumerated herein, the Class Representative supports the Agreement and Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the proposed settlement and not object to it or opt out of it. The Agreement was reached after the facts had been thoroughly investigated by Class Counsel, including formal discovery concerning class issues, merits of the claims and Defendants' financial status. Class Counsel believes that the proposed settlement is fair and reasonable and in the best interests of the Settlement Class. The Parties submit that the proposed settlement is well within the range of reasonableness given the risks involved. To sum up, the majority of the relevant factors strongly support approval of the settlement.

WHEREFORE, the Parties respectfully request that the Court:

A. Enter an order (1) granting preliminary approval of the Parties' class action settlement, (2) approving the Notice to Settlement Class Members, (3) scheduling a Fairness Hearing, and (4) granting related relief as described in this Joint Motion, substantially in the form of the proposed order attached to the Agreement as Exhibit B; and

B. At or following the Fairness Hearing, enter a final order approving the class action settlement in accordance with the terms of the Agreement and substantially in the form of the proposed order attached to the Agreement as Exhibit C.

Respectfully submitted,

Dated: January 15, 2018.  By:   s/ Mary E. Olsen
Mary E. Olsen (OLSEM4818), *Pro Hac Vice*
THE GARDNER FIRM, PC
210 S. Washington Ave.
Mobile, AL  36602
P: (251) 433-8100
F: (251) 433-8181

Stuart J. Miller (SJM 4276), *Pro Hac Vice*
LANKENAU & MILLER, LLP
132 Nassau Street, Suite1100
New York, NY 10038
P: (212) 581-5005
F: (212) 581-2122

Brett M. Amron, Esq.
Florida Bar No.0148342
Hayley Gerson Harrison, Esq.
Florida Bar No. 105157
BAST AMRON LLP
Sun Trust International Center
One Southeast Third Avenue
Suite 1400
Miami, Florida 33131
Telephone: (305) 379-7904
Facsimile: (305) 379-7905

*Attorneys for Plaintiff and the Proposed Settlement Class*

*And*

By   s/ Kelly-Ann G. Cartwright
KENNETH A. JENERO
kenneth.jenero@hklaw.com
HOLLAND & KNIGHT LLP
131 South Dearborn Street, 30th Floor
Chicago, IL 60603

KELLY-ANN G. CARTWRIGHT
kelly-ann.cartwright@hklaw.com
CHRISTINE F. GAY
christine.gay@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 15th day of January 2018, I filed the forgoing with the Court via CM/ECF thereby causing service on counsel of record.

                                          /s/Kelly-Ann G. Cartwright